(No. 5462.  February 28, 1930.)

JOHN SNYDER, Appellant, v. CECELIA RAYMOND, Respondent.

[285 Pac. 478.]

Earle W. Morgan and Cox & Martin, for Appellant.

Verner R. Clements and M. H. Greene, for Respondent.

LEE, J.—On February 20, 1927, Ida Raymond, a Nez Perce Indian, died, leaving as surviving spouse plaintiff and appellant, John Snyder. A will alleged to have been executed by her on the day preceding was presented to the probate court by defendant and respondent, Cecelia Raymond, half-sister of the deceased and sole beneficiary under said will. An order was thereafter duly made, admitting said will to probate. Whereupon plaintiff filed his petition alleging mental incompetency and undue influence, and prayed that such order be revoked and the will rejected.

From a denial of his petition he appealed to the district court. There judgment was rendered against him and his motion for new trial was denied. He has appealed from both.

The will in question was as follows:

"Webb Idaho
"Feb 19th 1927

"Last Will and Testament of Ida Raymond who leave to her Sister Cecelia Raymond the South half of the South East quarter of Sec 18 and the South East quarter of the South West quarter of Sec 16 and Lots 1, 2, 3, 4, 5, 6, 7, 8, 9, 10 and 11 of Sec 21 Township North of Range 4 West Boise Meridian in Idaho 317 Acres. More or Less. It is understood and agreed that Ceciela Shall draw all the Rental on

Lot's 7, 8, 9, 10 of Sec 21 T P. 34 N R. 4. W which contains 60 Acres Plow land. the Rental being $240.00 per Year. It is to be understood this Testament Covers all and is to Fall to My Sister Ceceil all that I Possess.

"Sighned IDA RAYMOND (Thumb mark)

"Witnesses
"CURRY TABABOO
"MARY TABABOO (Thumb mark)
"JETHRO J. T. SAN GARDE,
"Justice of the Peace."

Upon the trial there was introduced, over defendant's objection, the following instrument admittedly executed by the deceased four days prior to the execution of the will involved here:

"5–109

"INDIAN WILL UNDER THE ACT OF JUNE 25, 1910 (36 STAT. L., 855–856), AS AMENDED BY THE ACT OF FEBRUARY 14, 1913 (37 STAT. L., 678).

"LAST WILL AND TESTAMENT
OF
IDA RAYMOND (SNYDER)

"I, Ida Raymond of the Nez Perce Tribe, of the State of Idaho, being of sound and disposing mind, realizing the uncertainty of human life, do make this my Last Will and Testament, hereby revoking all former wills by me made, in manner and form following, that is to say:

"First.—I desire that all my legal debts be paid, including the expenses of my last illness, funeral, and burial.

"Second.—I give, devise and bequeath to my half brothers, August Raymond, Michael Raymond, and my half-sister Cecelia Raymond Green, share and share alike, my own allotment No. 452, containing 80 acres, situated in Nez Perce County.

"Third: I give, devise and bequeath to Mary Red Heart and I-ah-tote-kikt, share and share alike, my undivided one-half interest in Nez Perce Indian allotment No. 199 of Nuse-no-poo.

"I give, devise, and bequeath all of the rest and residue of my estate, real, personal, and mixed, to my half-sister, Cecelia Raymond Green.

"John Snyder, my legal husband, deserted me when I became sick and unable to care for myself, and for this reason I will and bequeath to him the sum of $1.00, to be paid from my account at the Agency office after the debts mentioned in paragraph One herein has been fully satisfied.

"In witness whereof, I, Ida Raymond, have hereunto set my hand, sealed, published, and declared this to be my Last Will and Testament, this 15th day of February, in the year of our Lord one thousand nine hundred and 27.

"IDA RAYMOND X (L. S.)

"Witnesses:
  "CORBETT B. LAWYER,
    "Residing at Lapwai, Idaho,
  "OCIE B. WITMER,
    "Residing at Lapwai, Idaho.

"The foregoing instrument of writing was here and now signed by Ida Raymond in our presence, and at his request and in the presence of each other we have signed as witnesses and he has published and declared this to be his (her) Last Will and Testament.

"CORBETT B. LAWYER,<br>"Residing at Lapwai, Idaho,<br>"OCIE B. WITMER,<br>"Residing at Lapwai, Idaho."

Notwithstanding her objection to this instrument, defendant fully questioned in relation thereto, and brought out the fact that, inasmuch as the estate of the testatrix consisted of both allotted lands held in trust by the United States government and lands held in fee, the testatrix had been advised that she had to make separate wills affecting each class of property; that such was at all times her understanding, and that the second instrument was nothing but an attempt to dispose of the remainder of her estate after the disposition of the trust property by the former. Such understand-

ing is doubly vouched for both by the record and the following excerpt from defendant's and respondent's brief:

"We accept as conclusive, however, the declarations of the testatrix that the San Garde will was 'to finish,' 'to complete' the devising and bequeathing of her *entire* estate, that the wills are not inconsistent, that the Indian will was intended to apply solely to trust property, and that together they make up the true intent of the testatrix to dispose of her *whole* estate."

Respondent has moved to dismiss the appeal for the reason that the undertaking furnished by the foreign surety company was not, as required by C. S., secs. 5008, 5009, countersigned by a resident agent. An inspection of the record discloses that the bond was executed by Arnold P. Henzell, as attorney-in-fact for the surety company; that said Henzell was acting under a certificate of authority as resident agent of said company, at Lewiston, Idaho, duly issued by the state director of insurance and that, at the time, there was on file in the office of the auditor of Nez Perce county a general power of attorney executed in his favor by said principal.

Upon the face of the bond none of these facts appeared except that Henzell executed it as attorney-in-fact. Respondent contends that such execution was not a "countersigning" and that the fact of residence must be shown in the bond itself. We cannot agree. It is the fact that controls, not what may appear upon the face of the bond. The countersigning is required only in case the bond has been executed by someone without the state, in order to give resident authentication to its verity. It would be an idle gesture for a resident agent to execute a bond as attorney-in-fact and immediately duplicate his signature by "countersigning." The motion is denied.

Respondent suggests as diminution certain records and affidavits by her filed in opposition to appellant's motion for new trial. After denying the motion, the trial judge expressly certified that he did not consider the instruments

so filed. This court,. in reviewing his honor's ruling, can examine only such things as he considered. If he mistakenly refused to extend consideration to anything properly before him, the remedy would be a remanding of the cause for further hearing on the motion. The appellate court cannot decide the motion for him. Furthermore, the matter sought to be brought up goes to the impeachment of appellant's witness, a matter with which -this court is not concerned, and is rendered immaterial, since the trial court decided the motion in respondent's favor. The suggestion of diminution will, therefore, not be entertained.

Primarily, plaintiff contends that the will of February 19th was executed under a mistake of law and fact, and, therefore, a nullity. Defendant counters with the objection that no such issue having been incorporated in or contemplated by plaintiff's pleadings below, it cannot now be considered here. The issue was injected into the record by the recitals of defendant and her witnesses. Irrespective of any pleading, it was volunteered by her as a justification and explanation of the conduct of testatrix. It was before the trial court and is properly here. As plaintiff's counsel cogently observes: "A party will not be permitted to gamble by introducing evidence outside the pleadings, and, when the result is disastrous, take shelter behind the pleadings." Application of the rule may be found in *Douville v. Pacific Coast Casualty Co.*, 25 Ida. 396, 138 Pac. 506; *Schwaninger v. McNeeley & Co.*, 44 Wash. 447, 87 Pac. 514.

Defendant contends that it was necessary for decedent to make two wills; that the allotted lands held in trust by the government were without the jurisdiction of the state courts, and a devise thereof could be made only in accordance with the regulation of the Department of the Interior and upon special blanks furnished by it. It is true that the government requires that a devise of such trust property be approved by the Secretary, but it nowhere claims the exclusive function of drafting the devise. Act of Congress, February 14, 1913, clearly evinces the purpose of the sovereign not to part with its title to any trust lands by reason

of any will whatsoever until it is assured that the rights of its wards have been protected. Section 36 of the Department of the Interior's Regulations Relating to the Determination of Heirs and Approval of Wills, approved June 19, 1923, especially provides for a hearing, notice thereof to all persons interested, including the presumptive legal heirs, and a full determination of the rights of the parties, after ample opportunity to the heirs to object to the will and its approval. Herein both wills were rejected by the Commissioner of Indian Affairs.

It was wholly unnecessary for the decedent to make two wills disposing of her estate piecemeal. Here we have two wills, both plain and unambiguous, each effectually and finally disposing of her entire estate. Either is directly antagonistic to the other. If the one stands, the other must fall. There cannot be two conflicting wills for the same estate, unless the latter is a revocation of the former. That the will of February 19th was not a revocation of the will of February 15th appears, as has been said before, from both the record and defendant's brief. It is conclusively apparent that Ida Raymond executed the will of February 19th under mistake of both law and fact, the which renders it null and void.

Judgment reversed. Costs to appellant.

Givens, C. J., and Budge and Varian, JJ., concur.

Petition for rehearing denied.